The Illinois Central Railroad Company

*v.*

The People of the State of Illinois.

*Filed at Springfield June 17, 1887.*

1. Railroads—*unjust discrimination—power of the State to regulate.* The legislature has the undoubted power, under the constitution, to prohibit unjust discrimination in charges for the transportation of persons and freights by railroads, whether as between individuals, or localities or communities.

2. Same—*distinctive purposes of sections 1 and 6 of the statute.* Section 1 of the act against unjust discriminations by railway corporations, is directed against discriminations between localities through unequal charges for the same transportation, in the same direction, over equal parts of their roads; and it is violated when all are compelled to pay for transportation for a shorter distance a rate equal to or greater than that charged for the same transportation in the same direction for a longer distance, as well as when one or a few individuals are compelled to do so.

3. Section 6 of the act simply gives a right of action against a railway company to any person or corporation which has paid the company extortionate charges, or charges for receiving or handling freight in violation of the provisions of the act, and which has therefore been unjustly discriminated against by such railway company in its charges, for three times the amount of the damages sustained by the party aggrieved. That section has nothing to do with suits by the State, and its purpose is to afford a personal indemnity in cases of personal injury occasioned by the unjust discrimination.

4. Same—*discriminations as between localities, not involving the element of competition in trade.* On a prosecution by the People, against a railway company, to recover the penalty imposed by section 4 of the act of 1873, for an unjust discrimination in charges between localities, it is not incumbent on the People to prove a personal discrimination and a personal injury as between individuals, but it is sufficient merely to prove a discrim-

ination as between localities, omitting specific evidence of its effect upon different individuals.

5. So the fact that there may be no competition in a particular trade between two points upon a railroad, does not show that a discrimination in charges for transportation, as between such points, is not unjust.

6. In this case it appeared that a railway company charged ten cents per hundred pounds for carrying green coffee in the sack from Chicago to Mattoon, a distance of one hundred and seventy-two miles, and on the same day charged another person sixteen cents per hundred for carrying coffee in the sack from Chicago to Kankakee, a distance of only fifty-six miles, the transportation in both instances being in the same direction and over the same road. In a suit by the State to recover the penalty for unjust discrimination, the defendant showed that there was no competition between Kankakee and Mattoon in the grocery trade, and claimed that the discrimination between these points was not unjust, and therefore allowable: *Held,* that the fact so shown constituted no defence to the action.

7. Same—*discrimination at competitive points.* The fact that at a given point there is competition among railroads for the transportation of freights, and some of them are charging reduced or "cut" rates, will not justify another railway company in discriminating in favor of such point as against other points on the line of its road.

8. A reduced or "cut" rate by a railway company to meet a "cut" rate of a rival road, which reduced or "cut" rate discriminates against a non-competitive point, is not, of itself, within the meaning of the statute, a just discrimination.

9. The rivalry at competing points, which the statute declares shall not justify a discrimination in charges, has not reference solely to such as competes for a common business to a common market. It may apply to the same or different markets, and to roads having different *termini.*

10. Same—*instances where there may be a just discrimination.* There may be some greater expense to a railway company in carrying goods a given short distance than for a longer distance per mile, owing to the stopping and starting of trains, loading and unloading, the wear of machinery, etc.; and when it has full loads for its cars in each direction, it may carry more cheaply than when it is obliged to run its cars empty, or only partially loaded, in one direction, or only partially loaded in both directions. For these and other reasons affecting the cost of carriage, a company may often afford to carry the longer distance to or from competitive points more cheaply, *pro rata,* than for the shorter distance. Discriminations made in good faith because of such circumstances, are just, and not within the statute.

Appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

20—121 Ill.

Messrs. Palmers & Shutt, for the appellant:

No discrimination can be unjust unless it is injurious to some individual, and a discrimination in favor of Hennessy, at Mattoon, can not be unjust to Harrington, at Kankakee, unless it in some way operated to his injury; and unless injurious to Harrington, this discrimination can not be "unjust discrimination," within the meaning of the statute. This view derives force from the sixth section of the act, which gives a remedy to the party "so offended against," and damages to the "party aggrieved." Therefore the discrimination must "offend" or "aggrieve" some one. Without injury to some one, discriminations by the carrier are lawful.

If the service or price is unreasonable and injurious, the unreasonableness is equally actionable whether it is in inequality, or in some other particular. A service or price that would otherwise be reasonable, may be made unreasonable by unreasonable discrimination, because such discrimination is in violation of the common right. There might be cases where persons complaining of such a violation could have no cause of action, because they would not be injured. There might be cases where the discrimination would be injurious. In such cases it would be actionable. *McDuffie* v. *Railway Co.* 52 N. H. 430.

The important point to every freighter is, that the charge shall be reasonable, and a right of action will not exist in favor of any one, unless it be shown that an unreasonable inequality has been made, to his detriment. A reasonable price paid by such party is not made unreasonable by a less price paid by others, or, as said by Crompton, J., to the plaintiff, on the trial of such a suit, "the charging of another party too little, is not charging you too much." *Scofield* v. *Railway Co.* 43 Ohio St. 571; *Ragan* v. *Aiken*, 9 Lea, 609.

Harrington testifies that the difference in charges did not affect him in any way,—that Mattoon and Kankakee are so far apart that defendant's charges had no influence upon his

business.    These facts disprove injury from the different rates.    *Dobie* v. *McFarlan*, 17 Scotch Dec. (4th series,) 304 ; *In re Railway Co.* 1 C. B. (N. S.) 420 ; 87 E. C. L. 418 ; *In re Ransom*, id. 451 ; id. 450.

The reduced rates of the other rival roads justified a temporary reduction in rates to and from the competing point.

Competition, in the sense of the statute, is the rivalry which may, and perhaps always does, exist between railways which compete for a common business, to a common market. The railroads connecting Mattoon with Peoria, St. Louis, Indianapolis and Terre Haute, were in no sense competitors with the defendant for freight from Chicago.    Their object was to create for themselves an independent, separate business.    They did not go to Chicago as a common source of supply, and compete with the defendant for the Mattoon freight from that point.    They did not seek to share the defendant's business, but to destroy it.

The statute refers to competition in transportation, and not in markets or sources of supply.

The constitutional provision requiring the passage of laws to prevent unjust discrimination, gave no greater power than the legislature otherwise would possess.    *Vincent* v. *Railway Co.* 49 Ill. 33 ; *People* v. *Railway Co.* 55 id. 111 ; *Railway Co.* v. *People*, 56 id. 365 ; *Railway Co.* v. *People*, 67 id. 11 ; *Railway Co.* v. *Railway Co.* 110 U. S. 667 ; *Ruggles* v. *People*, 91 Ill. 256.

At common law, carriers were not allowed to exercise any unjust discrimination between individuals, in their rates of toll.    *Railway Co.* v. *People*, 67 Ill. 17.

As to what lawful discriminations the carriers may make, see *Twells* v. *Railroad Co.* 3 A. L. (N. S.) 729 ; *Nicholson* v. *Railway Co.* 94 E. C. L. 366 ; *In re Oxlad*, 1 C. B. (N. S.) 453 ; *Ransom's case*, id. 437 ; *Ragan* v. *Aiken*, 9 Lea, 609.

The business freedom recognized by the most rigid rule of equality, admits of special arrangements to meet special

·emergencies of traffic, where the interest of the immediate parties is alone involved. In this case the interests of the railway companies and the traders at Mattoon were alone ·affected by the reduction in the rate, and its effect upon the Mattoon trade must be assumed to have been beneficial rather than prejudicial. *Messenger* v. *Pennsylvania Co.* 8 Vroom, 531; *Railway Co.* v. *Rust,* 56 Texas, 98; *Hays* v. *Pennsylvania Co.* 12 Fed. Rep. 309; *Ex parte Koehler,* 23 id. 529; *Menacho* v. *Ward,* 27 id. 529.

Not only were the circumstances attending the reduction of the rate at Mattoon special and unusual, but the reduction was itself special, in the sense of being temporary.

It is admitted that the regular or commissioners' rate from Chicago to Mattoon was restored when, and as soon as, business resumed its normal and legitimate condition.

In many of the cases upon this subject, the circumstance that the alleged discriminating rate is temporary in its operation, is, of itself, considered as very persuasive, if not conclusive, evidence of the absence of a purpose to violate the rule against undue preferences. *Menacho* v. *Ward,* 27 Fed. Rep. 529; *Camblos* v. *Railway Co.* 4 Brewst. 563.

Mr. George Hunt, Attorney General, for the People:

Under the statute the fact that one point is a competing point, shall not be a sufficient excuse or justification for a discrimination.

It is claimed by appellant, that the discrimination was not unjust, because the evidence does not show some one was injured. The law declares what shall be *prima facie* evidence of an unjust discrimination, and does not require proof of anything more. *Prima facie* evidence is merely evidence which creates the presumption that a fact exists, and that is conclusive unless rebutted. (Wharton on Evidence, sec. 371.) In *Railroad Co.* v. *Ervin,* 118 Ill. 250, no claim

was made that injury to some person must be shown to establish a case of unjust discrimination.

The law declares the facts shown to be proof of an unjust discrimination. The fact that Harrington says he was not injured, does not prove the discrimination was not unjust. The admitted facts show he was injured. It may be true that the less rate to Mattoon did not injure him, but very clearly the higher rate did.

If a ten cent rate to Mattoon was a remunerative rate, the rate to Kankakee was highly exorbitant and extortionate. If the rate was extortionate, it was unjust; and if an extortionate rate was charged one, and a much lower or reasonable rate was given another, then the discrimination was unjust. If the rate to Mattoon was not remunerative, it was unjust to the stockholders; or if made up by charging other patrons correspondingly over-remunerative rates, then the discrimination is equally unjust.

The statute does not make any distinction between competition for freight between two common points, and competition when only one point is in common.

The attempt on the part of the defendant below to prove that there was no competition between Kankakee and Mattoon, was an attempt to prove a negative, and one which, from its very nature, is incapable of exact proof. And if that is a material question, how is it to be determined what point between Kankakee and Mattoon is the dividing line at which competition begins or ends?

The "cut" rates of rival companies did not justify the discrimination. The company is not entitled to a monopoly of the business at any station on its line.

It is no answer to say that the discrimination in rates was only temporary. The influence claimed to justify the action may easily be made permanent. There is no reason why the excuse should be held good as a temporary matter, and insufficient for a permanent rate.

Mr. Justice Scholfield delivered the opinion of the Court:

This is an action of debt for unjust discrimination, under the 3d section of the act to prevent extortion and unjust discrimination, approved May 2, 1873. (2 Starr & Curtis, 1962.) So much of the section as is pertinent to the question before us, reads as follows: "If any * * * railroad corporation shall charge, collect or receive, for the transportation of any passenger or freight, of any description, upon its railroad, any distance within this State, the same or a greater amount of toll or compensation than is at the same time charged, collected or received for the transportation, in the same direction, of any passenger or like quantity of freight of the same class, over a greater distance of the same railroad, * * * all such discriminating rates, charges, collections or receipts * * * shall be deemed and taken against such railroad corporation as *prima facie* evidence of the unjust discriminations prohibited by the provisions of this act; and it shall not be deemed a sufficient excuse or justification of such discriminations on the part of such railroad corporation, that the railway station or point at which it shall charge, collect or receive the same or less rates of toll or compensation, * * * for the greater distance than for the shorter distance, is a railway station or point at which there exists competition with any other railroad or means of transportation."

The alleged unjust discrimination is, that appellant, on the 5th day of February, 1884, carried over its railroad, from Chicago to Mattoon, a distance of one hundred and seventy-two miles, two sacks of green coffee for Patrick Hennessey, and charged and collected for such carriage, the sum of twenty-seven cents,—being at the rate of ten cents per one hundred pounds; and that, at the same time, appellant carried in the same direction, and over that part of its same railroad, from Chicago to Kankakee, a distance of fifty-six miles, two other sacks of green coffee, of like weight, of the same

class and quality of freight, for C. C. Harrington, and charged and collected from him, for such carriage, the sum of forty-five cents,—being at the rate of sixteen cents per one hundred pounds for such carriage.   Appellant gave evidence proving that there was no competition between Mattoon and Kankakee in the retail grocery trade, and that Harrington knew nothing, at the time, of the rate charged Hennessey, and that he was not personally injured by it.

The first question, then, to be considered is, was it incumbent upon appellee to prove a personal discrimination and a personal injury, as between individuals of a class, or was it sufficient merely to prove a discrimination as between localities, omitting specific evidence of its effect upon different individuals?

The clause quoted, it will be observed, does not mention persons.   It is, in effect, directed against discriminations between localities, through unequal charges for the same transportation, in the same direction, over equal parts of its road, and, obviously, it is as certainly violated when all are compelled to pay for transportation for the shorter distance a rate equal to or greater than that charged for the same transportation, in the same direction, for the longer distance, as where one or a few individuals are compelled to do so. Another clause of the same section is directed against discriminations between individuals, and for the present argument it may be conceded that to recover under that clause it is essential to show a personal injury.

Counsel refer to section 6 of the act, as sustaining their contention that it was essential to a recovery, here, that it should have been proved that some person was injured by the discrimination of which complaint is made.   But that section simply gives a right of action against the railroad company to any person or corporation which has paid to a railroad company extortionate charges, or charges for receiving or handling freight in violation of the provisions of the act,

and which has therefore been unjustly discriminated against by such railroad company in its charges, for three times the amount of damages sustained by the party aggrieved. It has nothing to do with suits by the State, and its manifest purpose is to afford a personal indemnity in cases of personal injury, without any regard to suits by the State for the statutory penalty. This suit is for the penalty prescribed by section 4 of the act. The language of that section is broader and more comprehensive than that of section 6. It is: "Any such railroad corporation guilty of extortion, or of making any unjust discrimination as to passenger or freight rates, * * * shall, upon conviction thereof, be fined in any sum not less than $1000 nor more than $5000, for the first offence." There being nothing qualifying or limiting the words "guilty * * * of making any unjust discrimination as to passenger or freight rates," they, manifestly, comprehend discriminations, in these respects, on account of localities.

The question whether it was competent for the General Assembly to prohibit unjust discriminations in charges for the transportation of persons and freights on account of localities, was settled in the affirmative in *Chicago and Alton Railroad Co.* v. *People ex rel.* 67 Ill. 11. That case was under the act in force July 1, 1871, which prohibited only such discrimination, as was expressly ruled in *Indianapolis, Decatur and Springfield Railroad Co.* v. *Ervin*, 118 Ill. 250. The information sought a forfeiture of the company's charter, because the company had, in violation of the act of 1871, "repeatedly charged and received for transporting lumber from Chicago to Lexington, a distance of one hundred and ten miles, the sum of $5.65 per one thousand feet, while, at the same time, it had only charged for transportation of like lumber from Chicago to Bloomington, a distance of one hundred and twenty-six miles, the sum of five dollars per one thousand feet." There was no charge of individual injury. The constitutionality of the act of 1871 was discussed by counsel in the

argument of the case, and the court, in the published opinion, after stating the respective contentions on that question, said: "Conceding, for the purposes of this appeal, all that is claimed by counsel for appellant in regard to the inviolability of railroad charters, regarded in the light of contracts, we are still of opinion that the legislature has the clearest right to pass an act for the purpose of preventing an unjust discrimination in railway freights, whether as between individuals *or communities*, and to enforce its observance by appropriate penalties." The opinion then shows why the legislature has the right to pass an act for the purpose of preventing an unjust discrimination between individuals, after which it proceeds thus: "If, then, an unjust discrimination is not to be permitted, as between individuals, in regard to freights, is it any more permissible as between different communities or localities? We are wholly at a loss to discover the slightest difference, in reason or principle. If a farmer, living three miles from the Springfield station, upon this company's road, is charged fifteen cents per bushel for shipping his corn to Chicago, is it just that the farmer who lives twenty miles nearer Chicago should be charged a higher sum? Certainly not, unless the railway company can show a peculiar state of affairs to justify the discrimination, and this must be something more than the mere fact that there are competing lines at one point and not at the other. The discrimination, in such a case, is as much a discrimination between individuals as it would be in reference to two persons living in the same locality and shipping at the same station, unless, as before stated, a satisfactory reason can be given for discrimination between the points of shipment,—and such a reason, in the case supposed, it is not very easy to conceive."

But the question occurs, does the fact that Kankakee and Mattoon are one hundred and seventeen miles apart, and that there is no competition between them in the retail grocery trade, show that this discrimination is not unjust? In

the illustration quoted from *Chicago and Alton Railroad Co.*
v. *People, supra,* we do not understand that the injustice to
the farmer living twenty miles nearer to Chicago in being
charged the higher sum, is affected by the circumstance that
their respective stations are competing points for the grain
trade to Chicago, but that the illustration would have been
as apropos had the farmers lived near the same railroad,
but the one more than a hundred miles nearer to Chicago
than the other. The injustice spoken of is not that resulting
from the destruction of local competition, but that resulting
from overcharging. Undoubtedly, injustice may result to a
given locality, and thus to every individual interested in its
business, by giving rates to a fairly competing point, which
will enable that point to take the business away from the
given locality. That, however, is not the only way by which
a given locality and its citizens may be injured by unjust
discrimination. It can hardly be necessary to argue that a
discrimination against a given locality, where there is charged
for the transportation of freights to or from it an amount
which the law does not allow, is unjust, no matter whether
other localities are only charged what the law allows, or are
charged less than the law allows; and it must also be equally
obvious, that in a case of this kind each individual shipper
is, in fact, injured to the amount of the excess which he is
required to pay beyond the amount which the law allows,
although he may, in fact, be ignorant at the time that the
amount which he is required to pay is beyond the amount
allowed by law. The effect falls, in the first instance, upon
him, although it is true that he may ultimately indemnify
himself by charging the amount up to the purchasers of that
which is shipped; but then it falls upon them, and is an
unjust discrimination to their injury.

We are, in determining whether, in a given case, the amount
charged by the railroad company is allowed by law, to keep in
mind that it may not, like a private individual, in the pursuit of

his private business, exercise an unlimited discretion in this respect, but that, exercising a franchise of a public character, it is limited by the amount of a reasonable remuneration. Now, in the present case, the remuneration exacted by the carrier and paid by the shipper, was sixteen cents per one hundred pounds for carrying from Chicago to Kankakee, and ten cents per one hundred pounds for carrying from Chicago to Mattoon, a distance of one hundred and seventeen miles greater. The presumption is that the higher charge is not reasonable. *Messenger* v. *Pennsylvania Railroad Co.* 36 N. J. (7 Vroom,) 407. And this is in accordance with the reasoning in *Chicago and Alton Railroad Co.* v. *People, supra.* It was, further along in the opinion in that case than our former quotation, said : "The only issue to be made under a law properly framed would be, whether there was an unjust discrimination or not. If, on the trial of such an issue, the prosecutor proves a permanently established discrimination, like that disclosed by the present record, and the company can show no other reason for it than the existence of a competing line at the favored point, the defence must he held unsatisfactory, notwithstanding witnesses may testify that they believe, as a matter of theoretical opinion, that the rates to Lexington are reasonable. They can not be reasonable, and the discrimination must be unjust, if the lesser rates for the greater distance have been established merely because the company has ceased to exercise at that point a practical monopoly. It can not be supposed that either of the competing lines would establish a permanent rate of charges upon a scale that would not furnish a remunerative profit. The rates at Bloomington would be established under the influence of a fair competition, which, by the ordinary laws that govern commerce, might be relied upon as establishing a rate not unreasonably low. At Lexington, the rates would be established by the uncontrolled discretion of the company, and it should not cause surprise if they were fixed unreasonably high. If the rates are not unreasonably

low at Bloomington, they are unreasonably high at Lexington. If they are unreasonably low at Bloomington and at all other points touched by competing lines, is it not certain that the company will indemnify itself by charging at the stations where there is no competition, a rate unnecessarily high?"

This argument, it is true, assumes that the discrimination is permanently established; but we think that affects only the strength of the presumption,—that, until explained, a temporary discrimination is equally within the logic of the reason. Under ordinary circumstances, compensation is proportional to labor with reference to kind, quality and quantity, and the kind and quality being in all respects the same, the greater compensation belongs to the greater quantity,—and hence, presumably, in ordinary cases, the longer carriage of the same freight deserves the higher remuneration; but if, in any case, it is alleged that by reason of exceptional circumstances the fact is otherwise, the party so alleging must show it.

But it is contended, these facts which appellant proved show that the discrimination is not unjust, namely: "Mattoon is a central interior point, one hundred and seventy-two miles from Chicago, with which it is directly connected by the Illinois Central railroad. Until just before February 5, 1884, (the date of the alleged discrimination,) from the superiority of Chicago as a point of supply for green coffee and other fourth-class goods, the Illinois Central, on account of its direct connection, had a large and profitable business between Chicago and Mattoon, in the transportation of these goods, at the rate of twenty-five cents per one hundred pounds, being the reasonable maximum rate fixed by the Railroad and Warehouse Commissioners. Prior to this date certain other railroads which centered at Mattoon, had secretly made a 'cut' rate of ten cents per one hundred pounds on fourth-class freight from Chicago to Mattoon, hauling such freight a greater distance than did the Central. The Indianapolis and St. Louis railway, which connects Mattoon with St. Louis,

a distance of one hundred and thirty-two miles, and with Indianapolis, one hundred and twenty-eight miles, and Terre Haute, fifty-seven miles, had, at the same time, made a 'cut' rate of ten cents per hundred from St. Louis and Indianapolis, and of six cents from Terre Haute. The Peoria, Decatur and Evansville railway, which connects Mattoon with Peoria, a distance of one hundred and twenty-one miles, had made a 'cut' rate of six cents per hundred from Peoria. All these cities are points of supply of green coffee and other fourth-class goods, for the Mattoon market. The effect of these rates made by the railroads mentioned, was to divert the trade from Chicago to the other points of supply mentioned, and, by consequence, to divert the traffic from the Illinois Central to the other railroad companies. As a result of these low rates, merchants bought at Indianapolis, Terre Haute, St. Louis and Peoria, and the volume of business from Chicago was greatly diminished. The cut rate of the Illinois Central at Mattoon, from twenty-five cents to ten cents per hundred pounds, was made under the influence of these facts." But does this, in effect, amount to more than saying that Mattoon is, in the language of the statute, "a railway station at which there exists competition with * * * other railroads?" It would seem not. Webster's definition of "competition" is, "The act of seeking or endeavoring to gain what another is endeavoring to gain at the same time; common strife for the same object." Here, the details of the strife,— the competing acts,—are stated; but the *gist* is, simply, that the reduced or "cut" rate was made because of the competition with the other railroads,—precisely what the statute says "shall not be deemed a sufficient excuse or justification of such discrimination." These facts do not show that the reasonable cost or expense to the company of the carriage of goods from Chicago to Mattoon, was, at that time, temporarily, less than it was to Kankakee.

We recognize the right of railroad companies to offer special inducements to shippers to obtain carriage of their freight; but such inducements, in our opinion, must not only be uniform to all in like situation, but also be reasonably justified by the expenses of the carriage to the company, and the anticipated profits resulting to the company from the carriage, presently and prospectively, in view of all the circumstances affecting those questions. We concede that, as a matter of fact, there must be slightly less expense to a railroad company in carrying goods of the same quality and quantity by a single continuous carriage, than by several disconnected and wholly independent carriages aggregating the same distance, because of the additional expense by reason of the more often loading and unloading, and of the additional labor and the wear and breakage of cars and machinery by the more often switching and stopping and starting of cars, etc., in the latter instance; and we also concede that, as a matter of fact, where a railroad company has full loads for its cars in each direction, it may carry the same freight more cheaply than where it is obliged to run its cars empty or only partially loaded, in one direction, or only partially loaded in both directions,— and that, for these and other like reasons affecting the actual expense of carriage to a railroad company, it may afford to carry the longer distance to or from the competitive point more cheaply, *pro rata*, than it can afford to carry the shorter distance to or from the non-competitive point. Discriminations made in good faith, because of such differences in expense of carriage, and proportioned with reference thereto, are undoubtedly just, and not within the purview of the statute. But it devolves upon the railroad company, relying upon such facts as a defence to a suit for unjust discrimination, to prove them to the satisfaction of the court. A reduced or "cut" rate of a railroad company simply to meet a reduced or "cut" rate of a rival railroad company, is mani-

festly not necessarily controlled or materially affected by any of these considerations.

It is evident, first, if this reduced or "cut" rate is not below the point of reasonable remuneration, there being no proof that the proportionate expense of carrying the same goods to Kankakee is so much greater than that of carrying them to Mattoon as to necessitate the greater charge therefor, the charge of carrying them to Kankakee is above a reasonable remuneration point, and the discrimination is therefore unjust; and second, if it is below the point of reasonable remuneration, it must work injustice to the stockholders of the corporation, and can not therefore be just.

This reduced or "cut" rate being but temporary, it is to be assumed that its purpose is to compel its rival to return to former rates; but we think, since the question concerns the public as well as these corporations, it must be held that any reduced or "cut" rate by either of the roads, merely for the purpose of coercing the action or obtaining an undue advantage over the other, is unjustifiable, and when it is found such rates are below the rates at non-competitive points, they are evidence of unjust discrimination, within the statute. If the reduced or "cut" rate of the rival road was below the point of reasonable remuneration, it was unjust; but its injustice affords no excuse for the appellants retaliating with another like injustice. Undoubtedly the public are benefited by competition in carriage, but it must be a healthy competition. A competition carried on below a reasonably remunerative point, it is obvious, must, sooner or later, end in the bankruptcy of some or all of the parties. The public are, in the end, injured instead of being benefited by this, for if some of the parties are bankrupted, those not bankrupted thereafter have a monopoly, and if all are bankrupted, the business is destroyed. A temporary reduction in prices below a reasonably remunerative point, manifestly must tend to unsettle values, and by producing a feeling of uncertainty and insecurity, in-

jure trade affected by it, far more than it benefits it. But the tendency of a temporary reduction below a remunerative point is to be followed by a corresponding increase above that point, and since, in the very nature of things, it is impossible that this can fall equally upon the public affected by it, it works injustice. Some have had carriage for less than they ought to have had it, and others, in like situation, have had to pay more for carriage than it is worth.

It is contended, however, that the language of the clause under consideration, "that it shall not be deemed a sufficient excuse or justification of such discrimination on the part of such railroad corporation that the railway station or point at which it shall charge the same or less rates of toll or compensation for the transportation of such * * * freight * * * the greater distance than for the shorter distance, is a railway station or point at which there exists competition with any other railroad or means of transportation," has reference to that kind of rivalry which competes for a common business to a common market. But that is not the language employed. If the competition is for the carriage of the same freight, what possible difference can it make to the person having to bear the burden of paying for the carriage, and who is discriminated against, whether the markets are the same or not? The fact that there is competition between different markets, has no tendency to prove that there is no competition in carriage between roads terminating at the different markets. It is, on the contrary, manifest that the competition in carriage between roads having different *termini*, is quite as great as that between different markets for the same commodity, and must often itself determine the market to be sought; and we feel authorized to take notice, as a part of the history of the times, that the discriminations because of competition at railroad crossings, had quite as much, if not more, influence in inducing the enactment of the statute under consideration, than discriminations because of the competition of parallel

lines of railways, and this without regard to whether the respective roads had the same or different *termini*. The injury relieved against is that resulting by reason of the discrimination in the cost or price of carriage generally, and not solely that resulting by reason of the discrimination in carriage to the same identical market.

We have, with much care, considered the able arguments on behalf of appellant, and while we have not herein noticed all the objections therein urged, in the same order, the views we have expressed necessarily lead to an affirmance of the judgment. It is therefore affirmed.

*Judgment affirmed.*