(No. 19194.—

THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellee, *vs.*
THE COMMERCE COMMISSION *ex rel.* The Brownell Improvement Company, Appellant.

*Opinion filed December 18, 1930.*

C. B. CARDY, W. H. DYER, and W. F. GARMAN, for appellant.

VERNON W. FOSTER, and ELMER A. SMITH, for appellee.

NUEL D. BELNAP, for the Lehigh Stone Company, intervening petitioner.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Brownell Improvement Company, an Illinois corporation owning and operating a quarry at Thornton, from which it produces, ships and markets crushed stone, filed with the Illinois Commerce Commission a complaint against the Illinois Central Railroad Company charging that the rates maintained by the railroad company to points of destination in the State of Illinois on the line of its railroad were excessive, unjust and unreasonable and subject the complainant to undue and unreasonable prejudice and disadvantage and accord to competitors of complainant undue and unreasonable advantage, in violation of the Public Utilities act; that the purpose of the complaint is to seek the establishment of just, reasonable and non-discriminatory rates on crushed stone from Thornton to points of destination on the Illinois Central railroad in the State of Illinois. The petition prays for the establishment of such rates as may be just, reasonable and free from unjust discrimination. The railroad company answered with a general denial, and the Lehigh Stone Company, an Illinois corporation engaged in the business of quarrying and marketing stone

from its quarries at Lehigh, in Kankakee county, filed an intervening petition, alleging that the rates complained of by the Brownell Improvement Company were not excessive, did not subject the complainant to undue and unreasonable prejudice and disadvantage or accord to its competitors undue and unreasonable advantage, and praying that the complainant be required to show cause why the present differential rates between Thornton and Lehigh should not be increased. The complaint was amended so as to eliminate the charge that the rates from Thornton complained of were excessive, unjust and unreasonable, and to charge that the rates from quarries at Kankakee and Lehigh and in the Chicago switching district to points of destination on the line of the railroad in Illinois were substantially and relatively lower than the rates from Thornton for similar transportation and their maintenance results in an undue and unreasonable prejudice and disadvantage to the complainant. At the hearing much evidence was introduced for the purpose of showing all the conditions and circumstances which should be taken into consideration in fixing the rates. The issue presented only the question of the relation of the rates. The question of the reasonableness was not involved. The statement which the examiner made at the beginning of the taking of evidence, that the complaint alleged, in substance, that the rates being exacted by the Illinois Central Railroad Company for the transportation of crushed stone from Thornton, Illinois, to points of destination on the line of the Illinois Central Railroad Company for intrastate transportation are excessive, unjust and unreasonable and subject the complainant to undue and unreasonable prejudice, did not, of course, enlarge the issue. The complaint as amended made no reference to excessive, unjust and unreasonable rates but was confined to the maintenance by the railroad company of rates from the quarries at Kankakee, Lehigh and in the Chicago switching district which were substantially and relatively lower than

the rates maintained from Thornton for similar transportation, and it was with reference to that issue, only, that the evidence was directed or could be considered. On February 10, 1926, the commission entered a final order, in which it found that the railroad company maintained rates for the transportation of crushed stone from Thornton to points on its line in Illinois south of Kankakee 100 miles or more which were higher than the rates concurrently maintained by it from Lehigh and Kankakee, and that such rates were unjust, unreasonable and discriminatory. The railroad company was ordered to maintain rates for intrastate transportation of crushed stone from Thornton to points on its line south of Kankakee for distances less than 100 miles from Kankakee which should be respectively greater by thirteen cents from Thornton than from Kankakee and Lehigh to Chebanse, and that this difference of thirteen cents per ton should gradually disappear as the distances increased south of Kankakee, so that it should be eight cents at any point 50 miles south of Kankakee and should completely disappear at any point 100 miles south of Kankakee. It was found that there was no justification for increasing the rates from Lehigh. On March 2, 1926, on petition of the Lehigh Stone Company, the commission granted a further hearing and additional evidence was introduced. On December 10, 1927, the commission entered an order re-affirming its original findings, conclusions and order. An appeal was prosecuted to the circuit court of Kankakee county, which set aside the order of the commission on the grounds that it was unreasonable, unlawful and against the manifest weight of the evidence and that the commission had exceeded its powers.

The Illinois Central Railroad Company has maintained a uniform difference of thirteen cents a ton in the rates on stone from Thornton and from Lehigh to destinations on its railroad south of Kankakee since July 1, 1922. The difference was ten cents a ton when rates were first established

at Thornton on July 16, 1916. The general increases in rates increased this difference to fourteen cents, which was reduced to thirteen under the reduction in all rates on July 1, 1922. In the opposite direction the differential of thirteen cents in favor of Thornton over .Lehigh has also been uniformly maintained to destinations other than those in the Chicago switching district. It is 31 miles farther from Thornton than from Lehigh to destinations on the main line of the Illinois Central railroad south of Kankakee and 42.8 miles farther on the line west to Minonk and Bloomington. The relief which the Brownell Improvement Company asked at the hearing was the abolition of this thirteen cents differential and the establishment of the same rates from Thornton as from Lehigh to places south of Kankakee, and this relief was granted except as to places less than 100 miles from Kankakee.

The order of the commission fixed identical rates from Thornton and Lehigh to all places 100 miles or more beyond Kankakee without regard to the greater length of the haul from Thornton, which was 31 miles to places on the main line and 42.8 miles to places on the line toward Bloomington. No consideration appears to have been given to the difference between the cost of the service at Thornton and at Lehigh, and the order directing the establishment of identical rates appears to be based altogether on competitive rather than on transportation conditions. The order of the commission found that prior to July 1, 1916, the plant of the complainant at Thornton was served exclusively by the Baltimore and Ohio Chicago Terminal Railroad, and traffic of the Illinois Central Railroad Company to and from that plant required the services of crews of both railroads. On that date, by contract between the two railroad companies, the Illinois Central began serving the plant directly with its own engines and cars, using the rails of the Baltimore and Ohio Chicago Terminal Railroad, and this continued until August 6, 1924, when the Illinois Central com-

pleted the construction of a track from its Markham yards to the complainant's plant. Since that time the traffic has been handled by the Illinois Central to points on its own line, eliminating the use of the terminal railroad facilities and reducing the mileage approximately 15 miles. No reduction was made in rates and complainant was not given the benefit of changed conditions. This new track extends to the plant, 3.6 miles from the Markham yards on the Illinois Central main line, and the switching services at the plant are performed by the Illinois Central switching crews. The Markham yards are approximately 32.5 miles north of Kankakee.

The order further found that the plant of the Lehigh Stone Company is located at Lehigh, Illinois, a point on the Lehigh and Southern Railway 13.66 miles from Kankakee, Illinois, which is located on the main line of the Illinois Central Railroad Company. This plant is served directly by the Illinois Central Railroad Company, its switching crew operating out of the Kankakee yards of that railroad company. The rates for the transportation of crushed stone maintained by the defendant from Thornton to points on the line of the Illinois Central Railroad Company, Chebanse, Illinois, and south, are now thirteen cents a ton greater than the rates maintained by the defendant for the transportation of crushed stone from Lehigh and Kankakee to the same points of destination. The propriety of maintaining a level of rates for the transportation of crushed stone, intrastate, in Illinois from Thornton to points of destination on the line of the Illinois Central Railroad Company, Chebanse, Illinois, and south, which are respectively thirteen cents a ton greater than the rates concurrently maintained for the transportation of crushed stone, intrastate, in the State of Illinois from Lehigh and Kankakee to the same points of destination in Illinois, is here presented to the commission for determination. The evidence in this case shows that the Illinois Central Railroad Company does now publish, and

has for a long period of time published and participated in, joint through rates from Thornton, Lehigh, Kankakee and Joliet to points of destination in Indiana, Ohio and Michigan, and that said rates are identical in many instances from Lehigh, Kankakee, Thornton and Joliet to the same points of destination, although the distances from Lehigh, Kankakee and Joliet are greater than the distances from Thornton to the same points of destination. The evidence in this case discloses that a difference in transportation rates of thirteen cents per ton frequently prohibits complainant from marketing its stone in competition with Lehigh and Kankakee, because the margin of profit on crushed stone is so small as to preclude the complainant from shrinking its price the amount necessary to meet this competition.

In regard to the service rendered by the Illinois Central to the complainant at Thornton and the intervenor, the Lehigh Stone Company, at Lehigh, the commission made the following findings: "The Illinois Central railroad operates its own engines and cars over the tracks of the Lehigh and Southern Railway to serve the plant of the Lehigh Stone Company. For the use of this track, which is 2.57 miles in length, it pays one dollar per year to the owners and waives interest charges, amounting to $828 per year, on the value of the rails and fastenings owned by the Illinois Central Railroad Company and used in the construction of the tracks. In addition thereto the Illinois Central Railroad Company pays all maintenance expenses. The empty cars which are used for the loading of crushed stone at the Thornton plant are supplied from the Fordham yard of the Illinois Central railroad. These cars, having been made empty in the Chicago switching district or having been delivered to the Illinois Central railroad by carriers connecting with the Illinois Central railroad in the said Chicago district, are assembled at the Fordham yard and from there are transported by crews of the Illinois Central railroad to the Markham yard, at which point the

Illinois Central railroad maintains switching crews. These empty cars which are left at the Fordham yard are then placed for loading at the plant of the complainant by the switching crew employed at the Markham yard. The empty cars available are taken out of the supply of cars that are moving empty from the Chicago district south into the Illinois Central coal fields over the rails of the Illinois Central railroad. The cars furnished to the Lehigh Stone Company at Lehigh, Illinois, for loading are selected from any available supply of cars that may be in the yards of the Illinois Central railroad at Kankakee, Illinois, or may have been delivered to the Illinois Central railroad at Kankakee, Illinois, by the carriers connecting with the Illinois Central railroad at that point. In the absence of a sufficient number of cars to fill the requirements of the Lehigh Stone Company, empty cars are furnished from the Fordham yard of the Illinois Central Railroad Company. These empty cars from the Fordham yard are transported empty from the said yard to Kankakee, Illinois, where they are set out of the trains and left in the yard for the switching crews employed in the Kankakee yard to move those cars from the said Kankakee yard to the plant of the Lehigh Stone Company. After the cars are loaded at the plant of the complainant they are switched from the said plant by switching crews to the south end of the Markham yard at Markham, Illinois, where they are classified and placed in the trains of the Illinois Central railroad according to the destination. The cars loaded at the plant of the Lehigh Stone Company are switched from the plant of the said company by switching crews employed in the Kankakee yards of the Illinois Central railroad to Otto, Illinois, where they are placed on storage tracks and are there picked up by the south-bound trains which stop there for receipt or delivery of freight."

Section 38 of the Illinois Commerce Commission act provides: "No public utility shall, as to rates or other charges,

services, facilities or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates or other charges, services, facilities, or in any other respect, either as between localities or as between classes of service." This is the same, in effect, as section 3 of the Interstate Commerce act, which provides: "It shall be unlawful for any common carrier subject to the provisions of this chapter to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Because of the similarity of the two acts and their unity of purpose the decisions of the Supreme Court of the United States are persuasive in the construction of our statute. (*Terminal Railroad Ass'n* v. *Public Utilities Com.* 304 Ill. 312.) In *Interstate Commerce Com.* v. *Baltimore and Ohio Railroad Co.* 145 U. S. 263, it was held that "in order to constitute an unjust discrimination under section 2 [of the Interstate Commerce act] the carrier must charge or receive directly from one person a greater or less compensation than from another, or must accomplish the same thing indirectly by means of a special rate, rebate or other device. But in either case it must be for a 'like and contemporaneous service in transportation of a like kind of traffic under substantially similar circumstances and conditions.' " After considering several cases under the English Traffic act of 1854 it was further said: "In short, the substance of all these decisions is that railway companies are only bound to give the same terms to all persons alike under the same conditions and circumstances and that any fact

which produces an inequality of condition and change of circumstances justifies an inequality of charge."

Mere discrimination does not render a rate illegal under section 3 of the Interstate Commerce act. Only such rates as involve unjust discrimination are obnoxious to that section. The law does not attempt to equalize opportunities among localities. The advantage which comes to a shipper merely as a result of the position of his plant does not constitute an illegal preference. To bring a difference in rates within the prohibition of section 3 it must be shown that the discrimination practiced is unjust when measured by the transportation standard. In other words, the difference in rates cannot be held illegal unless it is shown that it is not justified by the cost of the respective services, by their values or by other transportation conditions. (*United States* v. *Illinois Central Railroad Co.* 263 U. S. 515.) The same principle was announced in *Illinois Central Railroad Co.* v. *People,* 121 Ill. 304, which was an action of debt against the railroad company to recover a penalty for a violation of the act to prevent extortion and unjust discrimination in the rates charged for the transportation of passengers and freights on railroads in this State, in force July 1, 1873. The court said: "We recognize the right of railroad companies to offer special inducements to shippers to obtain carriage of their freight, but such inducements, in our opinion, must not only be uniform to all in like situation, but also be reasonably justified by the expenses of the carriage to the company and the anticipated profits resulting to the company from the carriage, presently and prospectively, in view of all the circumstances affecting those questions. * * * Discriminations made in good faith because of such differences in expense of carriage, and proportioned with reference thereto, are undoubtedly just and not within the purview of the statute."

It is to be borne in mind that the complainant in its petition as amended made no charge that the rate from Thorn-

ton was of itself excessive, unjust or unreasonable, and the commission made no order reducing it to a reasonable, just and fair amount or fixing any rate except by comparison with the rate from Lehigh. Its finding that the rate is excessive, unjust and unreasonable is necessarily limited by the issue, and means simply that it finds the Thornton rate excessive, unjust and unreasonable when compared with the Lehigh rate. This finding, however, finds no support in the evidence. At the outset there is the difference in distance of the two places of shipment from the destination in question of from 31 to 42.8 miles, which of itself would ordinarily be regarded as requiring a different rate. If for any reason the usual presumption does not apply, the burden is necessarily on the complainant. If all other conditions are the same this difference in distance would justify a difference in rates, and there is no finding which the evidence sustains to justify a different conclusion. The commission made no finding that the differences in the rates to all stations should be a certain amount, either greater or less than thirteen cents. The complainant contended that no difference should exist between rates at Thornton and at Lehigh. The commission's finding as to this is: "We are not convinced, upon this record, that the rates to all points of destination, Chebanse, Illinois, and south, should be the same from Thornton, Illinois, as are concurrently applied from Lehigh and Kankakee, Illinois. For the shorter distances there might properly be, transportation conditions considered, higher rates from Thornton, Illinois, than are applied from Lehigh, Illinois, and Kankakee, Illinois. We are convinced that to points on the line of the Illinois Central Railroad Company south of Kankakee, Illinois, 100 miles or greater from Kankakee, Illinois, the rates from Thornton, Lehigh and Kankakee, Illinois, should be the same; to the points on the line of the Illinois Central Railroad Company south of Kankakee, Illinois, less than 100 miles from Kankakee, Illinois, the rates for the trans-

portation of crushed stone should be made from Kankakee and Lehigh, Illinois, thirteen cents per ton or less than the rates from Thornton, Illinois, beginning with a rate of thirteen cents per ton lower to Chebanse, Illinois, and grading it down so that when the point or points 100 miles south of Kankakee, Illinois, are reached, the thirteen-cent differential shall have disappeared. We believe it proper that the defendant should charge rates not to exceed eight cents per ton lower from Kankakee, Illinois, and Lehigh, Illinois, than from Thornton, Illinois, to point or points on the line of the Illinois Central Railroad Company 50 miles south of Kankakee, Illinois."

So far as this is to be regarded as a finding of fact, it finds the thirteen cents differential of Thornton over Lehigh as far south of Kankakee as Chebanse not to be excessive, unjust or unreasonable. This includes the local service at the two plants and the hauls from the plant at Thornton to the Markham yards and from the plant at Lehigh to Irwin and the 31 miles difference in distance. All these items are taken care of by the thirteen cents differential. What reason, then, is there for eliminating the differential beyond Chebanse? If the differential is lawful or just at Chebanse, why should it decrease beyond Chebanse, and 50 miles beyond Kankakee become eight cents and at 100 miles entirely disappear? There can be only one answer to this question, and that is, to enable Thornton to meet the competition of Lehigh in the more distant markets and overcome the advantage which Lehigh's closer proximity to the market gives it. The commission having found the differential lawful and not discriminatory at Chebanse there is no evidence which would justify finding it unlawful and discriminatory at any point farther away. The only difference—the greater distance—cannot justify such a finding.

Besides the difference in the length of haul other differences exist in operating and transportation conditions be-

tween Thornton and Lehigh. When the present differential was originally established the Illinois Central served the Thornton quarry by means of a trackage right over the Baltimore and Ohio Chicago Terminal Railroad which gave access to the quarry, and the haul, as testified to by the witnesses, was regarded as a single-line haul. The cost to the Illinois Central was $1.95 a car—approximately four cents a ton. At the same time the switching service at the Lehigh quarry was performed by the New York Central, for which the Illinois Central paid thirteen cents a ton. The Illinois Central therefore received, net, twenty-six cents a ton less out of the traffic from Lehigh than from Thornton. After this differential was established the Illinois Central built a spur-track from the Markham yards to the Thornton quarry in 1924 at a cost of $404,079.73, the annual interest charge on which exceeds $24,000, equivalent to 18 cents a ton for traffic handled in 1925 and thirty-two cents a ton for traffic handled in 1926. On the other hand, the Lehigh Stone Company built a track from the Illinois Central to its quarry at its own expense, for the use of which the Illinois Central pays an annual rent of one dollar and waives a rental charge of $828 a year on the rails and fastenings which were rented from it when the track was built. The result of these changes was, that after the construction of these tracks the interest charge, alone, at Thornton made the cost of the switching service at least eighteen to thirty-two cents a ton as against the four cents previously paid for the trackage right, and the cost of the service at Lehigh was $829 a year instead of the thirteen cents a ton previously paid to the New York Central. Another condition of operation which was to the disadvantage of Thornton and to the advantage of Lehigh was the fact that the maximum train load which could be handled between Thornton and the Illinois Central, owing to a heavy grade and a reverse curve in the new track, was twenty-seven cars, while fifty car-loads can be handled from Lehigh. Based on the rates

complained of, which are thirteen cents higher from Thornton than from Lehigh, the railroad company receives less money per ton mile from the shipments from Thornton than from those from Lehigh, the former yielding only 5.39 cents per ton mile while the latter yields 5.84 cents. The actual shipments from Lehigh in 1924 produced a return of 8 mills per ton mile. The same quantity of stone shipped from Thornton at its rate thirteen cents higher than Lehigh would have produced only 7.1 mills per ton mile.

The finding of the commission that the Illinois Central Railroad Company does now publish, and has for a long time published and participated in, identical joint through rates from Thornton, Lehigh, Kankakee and Joliet to points of destination in Indiana, Ohio and Michigan, although the distances from Lehigh, Kankakee and Joliet are greater than the distances from Thornton to the same points of destination, has no foundation in the evidence. The order includes a table which it finds sets forth many rates maintained by the Illinois Central Railroad Company on this basis and also giving the distances. This table is the complainant's exhibit 8, and it does not purport to give any joint rate published or participated in by the Illinois Central Railroad Company to any station in Indiana, Ohio or Michigan from either Thornton or Lehigh. In regard to this exhibit Mr. Maynard, the traffic manager of the complainant, testified that the rates shown from Joliet to Toledo, Peoria and Western stations apply *via* the Chicago and Alton. Thornton can ship to stations on the Toledo, Peoria and Western *via* the Chicago and Eastern Illinois on the same basis of rates as Lehigh but cannot ship *via* the Illinois Central. On page 3 of exhibit 8, showing rates to stations on the Nickel Plate and Lake Erie and Western district, he continued, the rates from Lehigh apply *via* the New York Central and Lake Erie and Western and the rates from Thornton *via* the St. Paul and Lake Erie and Western. With the exception of a few stations on the

Michigan Central, the rates shown on exhibit 8, beginning on the third page from the last, do not apply from Thornton to the Illinois Central. They apply *via* the Baltimore and Ohio Chicago Terminal and the Chicago and Eastern Illinois and from Lehigh by the New York Central. Mr. Sanborn, the vice-president and general manager of the Lehigh Stone Company, testified as to all rates on stone which the Illinois Central maintained to destinations in northwestern Indiana and the western part of Michigan, and presented an exhibit (No. 41) showing all the rates published by the Illinois Central railroad from any origin point in Illinois to any destination point in western Indiana or western Michigan, and it shows a differential in favor of Thornton varying from thirteen cents to thirty-seven, according to the difference in distances, which was approximately 31 miles by the Michigan Central and 42 miles by the C. S. S. and S. B.

The order of the commission finds that in some instances the Illinois Central Railroad Company has published and participated in joint through rates which are identical for Thornton and Lehigh, and that competitive circumstances and conditions have apparently influenced the establishment of these identical rates. In regard to these rates Mr. Law, general freight agent of the Illinois Central, stated that the Illinois Central in establishing these rates desired to continue the differential relation of Lehigh and Thornton as points of origin and was willing to establish rates to these destination points thirteen cents lower from Lehigh than from Thornton, but the connecting line would not agree to it, and the Illinois Central could not force the other carriers to participate in rates they did not want to participate in. As an alternative the Illinois Central provided the best rate it could from Lehigh, which was the rate from Thornton. The commission finds that the competitive circumstances and conditions have apparently influenced the establishment of identical rates from Thornton and Lehigh to some destinations. This evidence affords no foundation

for the finding of the commission, and for this reason the finding has no force to sustain the order.

The finding and order of the Commerce Commission that the rates maintained by the Illinois Central Railroad Company for the transportation of crushed stone from Thornton to points on the line of its railroad 100 miles or more from Kankakee which are higher than the rates concurrently maintained by it from Lehigh and Kankakee are unjust, unreasonable and discriminatory have no substantial foundation in the evidence but are manifestly contrary to its weight.

It is contended that the circuit court having found the order of the commission unlawful or unreasonable, erred in failing to remand the order to the commission. Under section 68 of the Commerce Commission act, if it appears that the commission failed to receive evidence properly proffered, the court is required to remand the case to the commission, with instructions to receive the testimony so offered and to enter a new order based upon the evidence theretofore taken and such new evidence as it is directed to receive, unless it shall appear that such new evidence would not be controlling, in which case the court shall so find in its order. This appeal does not come under the provisions of this section, because the record does not show that the commission failed to receive any evidence properly proffered. The section allows an appeal to the circuit court for the purpose of having the reasonableness or lawfulness of the order inquired into and determined, and the judgment of the court on appeal is a final order confirming or setting aside the commission's decision. This order disposed of the whole case on the merits. Upon a remandment of the cause the commission could have made no order except one dismissing the petition.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*